UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| BRENT HOUSTON | CIVIL ACTION NO. 06-cv-1636 |
| VERSUS | JUDGE STAGG |
| LARRY C. DEEN, ET AL | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Brent Houston ("Plaintiff") is a convicted state prisoner who served approximately five weeks of his sentence in two correctional facilities operated by the Bossier Parish Sheriff. The court screened the complaint and dismissed claims regarding lost property and the use of a law library. Docs. 17 and 27. The several defendants were served and asked to respond to the other allegations: religion and outdoor exercise. Before the court is Defendants' Motion for Summary Judgment (Doc. 35). Plaintiff has not filed any timely opposition. It is recommended, for the reasons that follow, that the motion be granted.

**Religion**

    **A. Introduction**

Charles Gray, a defendant and a Bossier jail official, testifies by affidavit that Plaintiff arrived in the Bossier system on July 31, 2006. Plaintiff was moved between medium and

maximum security facilities in the parish until September 26, 2006,[1] when he was transferred out of the Bossier Parish Sheriff's system to a different correctional facility to serve the remainder of his prison sentence. Thus, Plaintiff was in the Bossier facilities for less than two months.

### B. Exercise of Religion

Plaintiff alleges in his complaint and the several administration grievances he filed while in Bossier Parish that he is a Muslim. Plaintiff complains that there were no Muslim services held on Tuesday and Thursday, and there were no Friday night prayer services. He also complained that pudding served with his meal contained pork in violation of his religious principles. Finally, Plaintiff alleged that Captain Gray threatened retaliation against Plaintiff if he continued to file grievances about religious issues.

Captain Gray directly challenges Plaintiff's allegations through his affidavit testimony. He testifies that the information that the Department of Corrections provided to the Bossier Sheriff indicated that Plaintiff's religious preference was "unknown" and that his current record lists his preference as "Baptist." When Plaintiff made claims for special treatment based on his alleged Muslim faith, which was in contrast to his records, prison officials administered a written test regarding basic Muslim beliefs to help evaluate whether

---

[1] Gray's affidavit (page 3) and the memorandum in support of the motion for summary judgment (page 2) state that Plaintiff was transferred on September 6, but Gray states on page 7 that Plaintiff was transferred on September 26. The latter date appears to be consistent with the "Transfer Information" log that is attached to Gray's affidavit.

the claim of faith was authentic.  Plaintiff missed 12 of the 18 questions, which was considered a failing grade.  Captain Gray testifies that, regardless of that failure, Plaintiff was not denied an opportunity to express his religious faith.

The Sheriff's policy is to permit outside volunteers of any religion to come into the facility to conduct religious services for prisoners.  During the time Plaintiff was in Bossier Parish, August and September of 2006, there were no Muslim clergy who had applied with the Sheriff to conduct services for Muslim inmates (which make up only about 1% of the Bossier jail population).  Gray testifies that Plaintiff never suggested the name of a Muslim clergyman or listed any clergy on his visitor log so as to allow an individual meeting.  Gray adds that there was no prohibition or restriction on the inmates that would have prevented any group of Muslims to gather to conduct worship or prayer services in the 75-person dormitory where Plaintiff was housed.

Defendants are entitled to summary judgment with respect to this claim.  The plaintiff in <u>Baranowski v. Hart</u>, 486 F.3d 112 (5th Cir. 2007) challenged prison policies that affected his ability to participate in Jewish Sabbath and holiday services.  The 20 to 25 members of the plaintiff's religion constituted less than 1% of the inmate population at his prison, which allowed inmates to hold and attend live services only when a Rabbi or approved volunteer was available to lead the service.  The plaintiff was free, however, to exercise his religious beliefs by worshiping in his cell using religious materials, and he could access the chapel and additional religious materials on certain days and times.  The Fifth Circuit affirmed summary

judgment dismissing claims under the First Amendment and the Religious Land Use and Institutionalized Persons Act. Plaintiff in this case had even more ability to exercise his religion because, unlike the prisoner in Baranowski, he was not prevented from congregating with other inmates who shared his faith. Summary judgment should be granted on this claim.

## C. Pudding

Plaintiff alleges that he was served pudding that included pork. Captain Gray testifies that the Bossier Sheriff does not give its prisoners pork or pork-based items, regardless of their religious beliefs. (That is apparently a common practice in area jails and prisons because of claims such as the one asserted in this case.) Gray attaches to his affidavit a label from the banana pudding that was served. The list of ingredients does not include any reference to pork (or bananas), and Plaintiff has not responded with any summary judgment evidence that any of the listed ingredients are pork products. Summary judgment is warranted on this claim.

### D. Threats of Retaliation

Plaintiff alleged in his complaint that Captain Gray threatened to discipline Plaintiff if he continued filing grievances or assembled to pray to Allah. Gray testifies that he "vehemently denies" that he ever told Plaintiff that he would not allow inmates to practice their Muslim faith, pray to Allah, or assemble with other prisoners in the dorm for the purpose of worshiping Allah. Gray testifies that, on the contrary, he has worked with Muslim prisoners to ensure that there were not unnecessary restrictions on them regarding their faith.

Gray testifies that he did inform Plaintiff that filing multiple grievances regarding the same matter and filing repeated frivolous grievances were violations of the grievance procedure that could result in disciplinary action. Although Plaintiff filed approximately 16 grievances during his short stay, no disciplinary action was ever taken against Plaintiff in that regard. Furthermore, Plaintiff filed five grievances after the alleged threat was made. Plaintiff's allegation of retaliation was squarely contested by Gray's testimony, but Plaintiff has not responded with competent summary-judgment evidence that would create a genuine issue of material fact. Summary judgment on this claim is warranted.

**Exercise**

Plaintiff alleges in his complaint that prisoners are entitled to out-of-cell exercise. He adds that his medical condition (Hepatitis C) has resulted in an order by a physician that he receive exercise and fresh air.

Captain Gray testifies that Plaintiff was housed in a dormitory that measures 49 feet by 75 feet and is designed to hold 75 inmates. The dormitory, shown in a photograph attached to Gray's affidavit, has sufficient room to permit calisthenics and in-place exercise. Gray testifies that the Sheriff's practice is to permit prisoners outdoor recreation three times a week for 30 minutes at a time, weather permitting. A manpower shortage during the time of Plaintiff's stay, however, resulted in a reduction of outdoor recreation. The sheriff began a new work release program on August 29, 2006, and it required four deputies from Plaintiff's facility; six other deputies began a training academy on September 5, 2006. The

combination of those events resulted in a staff shortage that reduced outdoor recreation from September 5 through October 2, 2006. Plaintiff was permitted outdoor recreation on September 22. Recreation was available again on September 26, but Plaintiff was transferred to Bossier Parish on that date. The manpower shortage was resolved on October 2, and the regular schedule resumed. Plaintiff's medical records available to the Bossier Sheriff are in the record, and there is no indication that a physician ordered any particular exercise because of Hepatitis C or other medical condition.

Plaintiff was kept for only a short time in much more spacious accommodations than were afforded the plaintiff in Hernandez v. Valasquez, 522 F.3d 556 (5th Cir. 2008). Mr. Hernandez was mistakenly identified as a gang member and placed in lockdown for 13 months in a five-foot by nine-foot cell that he usually shared with another inmate. He was denied all outdoor and out-of-cell exercise privileges. The inmate could leave his cell only for showers, medical appointments and family visits. There was evidence at summary judgment that prisoners on lockdown were allowed indoor recreation in a "day room," but there was no evidence the Hernandez was actually allowed that opportunity. Officials did provide the prisoner with information on how to perform in-cell exercises. The prisoner testified that the confinement caused his muscles to atrophy and stiffen, and he complained of depression. Expert testimony based on review of medical records showed no complaint of muscle disorder.

The trial court in Hernandez granted summary judgment. The Fifth Circuit affirmed based on a finding that, with respect to the Eighth Amendment claim, the prisoner was not placed at a "substantial risk of serious harm." There is no indication that this Plaintiff faced such a risk or suffered any adverse effects from a lack of outdoor recreation or other exercise opportunity. He was kept in a larger cell for a much shorter time, and there is no evidence of any medical or health issues caused by a lack of exercise. This court has granted summary judgment in cases brought by convicted prisoners who were confined to smaller spaces than Plaintiff's dormitory and for a longer time. See Hines v. Louisiana Department of Public Safety & Corrections, 06-cv-0459 and Mitchell v. Hanson, 05-cv-1192. Summary judgment is warranted in this case as well.

Accordingly;

**IT IS RECOMMENDED** that the Defendants' Motion for Summary Judgment (Doc. 35) be **granted** and that Plaintiff's complaint be **dismissed with prejudice**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are

directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 17th day of June, 2008.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE